IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal Action No. 7:23-cr-00013 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| ANDREW BRADLEY GEARHEART, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendant. ) | |

In its second motion *in limine* (ECF No. 49), the government seeks to preclude Defendant Andrew Bradley Gearheart from cross-examining L.S., a cooperating witness, about several Facebook posts, arguing that her social-media commentary is not probative of L.S.'s character for truthfulness or bias or otherwise admissible, including for impeachment. This issue was fully briefed, and the court heard argument at the final pretrial conference on May 15, 2023. Because Gearheart broadened the scope of his impeachment request and raised additional arguments as to why L.S.'s Facebook posts were fair game for cross examination at this hearing, the court took the matter under advisement and directed the parties to file supplemental briefs addressing Gearheart's new arguments. Having considered these supplemental briefs and the applicable law, the court will grant the government's motion in large part, but will allow Gearheart to question L.S. about one Facebook post.

## I.   RELEVANT BACKGROUND

The government charged Gearheart for his alleged role in the unlawful acquisition of a 9mm pistol from a local gun store—a so-called "straw purchase." According to the government, Gearheart asked L.S., a family friend, to purchase this pistol for him. When L.S. agreed, Gearheart allegedly provided the money to cover the purchase price, drove with L.S.

to the gun store, and waited in the parking lot while she went inside. In filling out the requisite federal paperwork to complete the sale, the government contends L.S. falsely represented that she was the actual buyer of the pistol, when, in fact, she was buying it for Gearheart with his money and at his direction.

When later questioned by federal agents about this transaction, L.S. initially claimed that she had purchased the pistol for Gearheart as a gift. L.S. then abandoned the gun-as-a-gift explanation and admitted that she had actually acquired the pistol at Gearheart's behest. As such, the government intends to call L.S. at trial and proffers that she will reiterate the latter (straw-purchase) version of events to the jury.

In preparation for trial, Gearheart's attorneys investigated L.S.'s social-media profile and obtained numerous Facebook posts in which she opines about current events and political leaders and appears to endorse several wild conspiracy theories. Defense counsel provided screenshots of these Facebook posts to the government in reciprocal discovery, signaling that it would attempt to introduce these materials at trial.

The screenshots now at issue include one image of former President Donald Trump and L.S.'s commentary about his legal woes. In that post, L.S. laments that prosecutors "didn't go after" President Biden; his son, Hunter; former Speaker of the House of Representatives Nancy Pelosi; or "the Clintons." Above those comments, which are emblazoned over the image of former President Trump, L.S. posted: "The exact example of corruption. And you wonder why everyone lies, [*sic*] and has anxiety of telling the truth. It's because if they tell the truth their [*sic*] punished for it." (ECF No. 52 at 18.)

In other posts recently obtained by defense counsel, L.S. characterizes Washington, D.C., under current Democratic leadership, as a "foreign entity" without legitimate authority to rule; discusses, with apparent sincerity, aliens and reptilian invaders; denies the existence of the Holocaust; and expresses concern about the prevalence of pedophilia among world leaders.

Justifiably concerned by the bizarre and odious nature of these posts and Gearheart's likely intention to try to introduce them at trial, the government filed its motion *in limine* seeking their wholesale exclusion. In his initial response to the government's motion, Gearheart conceded that evidence of L.S.'s extreme political and social views were inadmissible under well-established evidentiary principles, including the rules governing witness impeachment. (*See* ECF No. 64 at 1–2.) As such, Gearheart acknowledged that it would be improper to utilize the bulk of L.S.'s Facebook posts to impeach her or otherwise impugn her character. But Gearheart argued that L.S.'s statement referencing the prosecution of former President Trump, wherein she contends that "everyone lies" out of fear for the consequences of telling the truth, is probative of her bias and an appropriate basis for inquiry on cross-examination.

At the hearing on the government's motion *in limine*, Gearheart backtracked on his initial concession about the inadmissibility of L.S.'s other Facebook posts, arguing for the first time that they are, in fact, probative of her character for truthfulness and potential bias as a witness.

## II. ANALYSIS

Gearheart argues for the admission of L.S.'s Facebook posts on two independent grounds. First, citing Federal Rule of Evidence 608(b), Gearheart argues that he should be allowed to cross-examine L.S. about her Facebook posts (and introduce extrinsic evidence related to them) because they are probative of her truthfulness (or, in this case, lack thereof). Second, Gearheart argues that certain posts are reflective of her potential bias in favor of the government and attendant motivation to fabricate evidence against him and, therefore, that the Sixth Amendment's Confrontation Clause requires their admission regardless of any limitations imposed by the Rules of Evidence. The government forcefully responds that although L.S.'s political and social views may be detestable, they are irrelevant to her character for truthfulness and do not establish a colorable claim of bias that can be probed on cross-examination. The court will address each argument in turn.

**A. Rule 608(b): Specific Instances of Conduct Bearing on Truthfulness**

As a general matter, evidence of a witness' poor character and prior bad acts is inadmissible unless it pertains to her truthfulness or untruthfulness or resulted in a felony conviction. *See generally* Fed. R. Evid. 404(b), 607, 608 and 609. Defendant argues that L.S.'s Facebook posts constitute specific instances of conduct that are probative of her character for untruthfulness and are thus permissible grounds for impeachment under Rule 608(b), which provides:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness' conduct in order to attack or support the witness' character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

4

      (1)    the witness; . . .

Applying this rule, the Fourth Circuit has long recognized the authority of a district court, in its discretion, to permit counsel to cross-examine witnesses about specific instances of conduct that are "probative of truthfulness or untruthfulness." *United States v. Leake*, 642 F.2d 715, 718 (4th Cir. 1981). But that discretion is not limitless, and the court must ensure that counsel's cross-examination is limited to those prior instances of conduct (or misconduct) that are "clearly probative of untruthfulness, such as perjury, fraud, swindling, forgery, bribery, and embezzlement." *Id.* Thus, by way of example, a witness' prior act of cheating her business partner would be fair game for cross-examination under Rule 608(b), while her prior act of animal cruelty would not (assuming it did not result in a felony conviction).

      Moreover, the plain text of Rule 608(b)—"specific instances of a witness' conduct"—expressly limits the scope of the inquiry to acts, and does not authorize counsel to probe about thoughts, ideas, or beliefs. *See In re Peanut Farmers Antitrust Litig.*, No. 2:19cv463, 2021 U.S. Dist. LEXIS 63971, at *10 (E.D. Va. Feb. 23, 2021) ("Consequently, rather than demonstrating that Gilbert engaged in 'conduct' as required by Rule 608(b), the evidence instead suggests that Gilbert engaged in thoughts which he expressed to his nephew."). Finally, Rule 608(b) prohibits the cross-examiner from introducing extrinsic evidence of the prior bad act, except for evidence of a qualifying conviction under Rule 609. Thus, a "cross-examiner may inquire into specific incidents of conduct, but does so at the peril of not being able to rebut the witness' denials. The purpose of this rule is to prohibit things from getting too far afield—to prevent the proverbial trial within a trial." *United States v. Bynum*, 3 F.3d 769, 772 (4th Cir. 1993). Simply put, Rule 608(b) gives the cross-examiner leeway to ask the question,

5

but she must live with the witness' answer—including one she firmly believes is an untruthful one.

Applying this standard, the court concludes that L.S.'s Facebook posts are not proper subjects for cross-examination under Rule 608(b). Although the posts at issue can fairly be described as delusional,[1] inflammatory, and anti-Semitic (among other things), they are not probative of the witness' character for untruthfulness within the meaning of Rule 608. L.S.'s extreme political views and apparent credulity about far-fetched conspiracy theories reflect poorly on her intelligence, judgment, and character, but they do not constitute specific instances of misconduct (like lying, cheating, stealing, swindling, and embezzling) that undermine her veracity as a witness. The same is true with respect to L.S.'s "everyone lies" post. Insofar as this is an expression of opinion, her post is not evidence that L.S. ever acted on this sentiment, and it simply does not qualify as the type of dishonest *act* covered by 608(b). In short, that rule does not license defense counsel to cross-examine LS about her Facebook posts.

**B. Confrontation Clause: Bias and Motive to Fabricate**

Alternatively, Gearheart argues that L.S.'s stated opinions—specifically, her published sentiments about lying and the perceived illegitimacy of the Biden administration—suggest

---

[1] Defendant also briefly suggests that the absurdity of L.S.'s posts indicates that she is not competent to testify in the first instance. Under the modern rules, all witnesses are presumed competent, and the court's gatekeeping role is limited to ensuring that the witness meets bare minimum standards of credibility. Weinstein's Federal Evidence § 601.03[1]. Under Fourth Circuit precedent, the only bases for disqualifying a witness are a lack of knowledge, a total inability to recall events at issue, or a lack of understanding of the obligation to tell the truth. *United States v. Odum*, 736 F.2d 104, 109-116 (4th Cir. 1984). Although L.S. apparently harbors views that might charitably be described as outlandish and offensive, this does not disqualify her from testifying.

6

bias and motive to fabricate and, therefore, are permissible topics for cross examination under the Confrontation Clause. The court partially agrees.

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Quinn v. Haynes*, 234 F.3d 837, 847 (4th Cir. 2000) (quoting U.S. Const. amend. VI). This constitutional right of confrontation, courts have long held, necessarily includes the right to cross examine witnesses for potential bias. *See United States v. Abel*, 469 U.S. 45, 50–51 (1984). And this is true even though the Federal Rules of Evidence do not explicitly codify impeachment based on bias. Weinstein's Federal Evidence § 607.04[1] (2023) (noting that, although there is no federal rule directly on point, bias impeachment is implicitly recognized in the Advisory Committee Notes to Rules 608 and 610, as well as by Rules 607 and 611). Indeed, the Fourth Circuit has concluded that "[t]he second major function of cross-examination . . . is to show that the witness is biased, prejudiced, or untrustworthy for any reason." *United States v. Caudle*, 606 F.2d 451, 457 n.3 (4th Cir. 1979). "Proof of bias is almost always relevant because the jury, as the finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *Abel*, 469 U.S. at 52. Finally, "[t]he distinction between impeachment evidence proving bias and impeachment of general credibility is important because generally applicable evidentiary rules limit inquiry into specific instances of conduct through the use of extrinsic evidence and through cross-examination with respect to general credibility attacks, but no such limit applies to credibility attacks based upon motive or bias." *Quinn*, 234 F.3d at 845 (cleaned up).

7

Gearheart argues that L.S.'s criticism of, and apparent hostility towards, President Biden and the federal government generally is probative of her bias in this case. But as the government aptly points out, this is belied by logic and common sense. Insofar as L.S. harbors animus against the current administration in Washington, this would suggest bias, if any, *against* the Department of Justice, rather than partiality for the government. In other words, L.S.'s purported anti-government views make it much more likely that she would favor Gearheart over the prosecutors. But accepting Gearheart's unpersuasive reasoning about anti-government bias, any marginal relevance is substantially outweighed by the danger of unfair prejudice and confusion. Given the irrational and inflammatory nature of the political views expressed, there is a significant risk that the jury would draw unauthorized inferences about L.S.'s character that have nothing to do with any potential bias.

But the same cannot be said of L.S.'s post referencing the prosecution of former President Trump. In that post, L.S. stated: ". . . And you wonder why everyone lies, [*sic*] and has anxiety of telling the truth. It's because if they tell the truth their [*sic*] punished for it." According to the records provided by Gearheart, L.S. authored this post on March 22, 2023, exactly one day after Gearheart was arrested on the straw-purchase charge and his Indictment was unsealed. By this point, L.S. was cooperating with the government against Gearheart and, despite admitting to her involvement in the alleged straw-purchase scheme, prosecutors had elected not to indict or arrest her. L.S.'s understanding of the government's forbearance based on her cooperation is unquestionably probative of her partiality towards the government and,

relatedly, gives rise to a potential motive to fabricate her testimony.[2] Against this backdrop, L.S.'s nearly contemporaneous statement about lying out of fear of potential consequences is potentially powerful circumstantial evidence of that bias. *See* 4 Weinstein's Federal Evidence § 607.04[4] ("The existence of bias usually is demonstrated only circumstantially by proof of relationships, conduct, or utterances.") The sweeping nature of the "everyone lies" statement, its timing, and the circumstances under which it was made lead the court to the ineluctable conclusion that it is sufficiently probative of potential bias and appropriate for cross-examination.[3]

### III.  CONCLUSION

For these reasons, the government's motion *in limine* (ECF No. 49) will be granted in part and denied in part. Specifically, the government's motion will be denied as to L.S.'s March 22, 2023 Facebook post concerning the prosecution of former President Trump, and granted in all other respects.

The Clerk is directed to forward a copy of this Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 5th day of June, 2023.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[2] The government represented that L.S. is represented by counsel and that it has dangled the possibility of allowing her to plead to a misdemeanor instead of a felony after her cooperation against Gearheart is completed.

[3] In so holding, defense counsel may confront L.S. with the statement by reading it to her. If L.S. acknowledges making the statement, this line of inquiry must cease. But if L.S. denies making the statement, because it relates to bias, counsel can introduce the contents of the Facebook post as an exhibit for impeachment purposes, since extrinsic evidence of bias is permissible.

9