IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal Action No. 7:23-cr-00013 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| ANDREW BRADLEY GEARHEART, | ) By:   Hon. Thomas T. Cullen |
| | )          United States District Judge |
| Defendant. | ) |

On April 27, 2023, the government filed a notice of intent to introduce at Defendant Andrew Bradley Gearheart's trial recorded jail telephone conversations between Gearheart and others following his arrest in this case. (ECF No. 42.) Gearheart objected to the government's notice (ECF No. 44), arguing that the jail calls are irrelevant, highly prejudicial, and should be excluded. The objection was fully briefed, and the court heard argument at the final pretrial conference on May 15, 2023. The court determined that the jail calls, insofar as they contained Gearheart's admissions about the alleged crime at issue, would be at least partly admissible and directed the parties to file supplemental briefs addressing whether additional excerpts should be introduced to provide clarity or necessary context for Gearheart's statements. Having considered these supplemental briefs, the parties' proposed excerpts, and the jail calls themselves,[1] the matter is now ripe for decision. For the following reasons, the court will not permit Gearheart to introduce additional portions of the jail calls beyond what the parties have already agreed to.

---

[1] At the court's direction, the government submitted the entirety of the recorded jail calls for the court's review. Individual jail calls are referred to as "Track 1, 2," et cetera.

## I.  RELEVANT BACKGROUND

The government charged Gearheart for his alleged role in the unlawful acquisition of a pistol from a local gun store—a so-called "straw purchase." According to the government, Gearheart asked L.S., a family friend, to purchase this pistol for him. When L.S. agreed, Gearheart allegedly advanced her the money to cover the purchase price, drove with her to the gun store, and waited in the parking lot while she went inside. In completing the requisite federal paperwork to complete the transaction, the government contends that L.S. falsely represented that she was the actual buyer of the pistol when, in fact, she was buying it for Gearheart with his money and at his direction.

After Gearheart was arrested for this alleged offense but before the court released him on bond, Gearheart made several recorded phone calls while being held at the Roanoke City Jail. In these calls, Gearheart spoke to his mother, girlfriend, brother, and other unidentified persons about a range of topics, including the circumstances of his alleged involvement in a straw-purchase scheme.

In preparation for trial, the government filed a notice of its intent to introduce excerpts of these calls pursuant to Federal Rules of Evidence 902(11) and 803(6). (ECF No. 42.) Gearheart objected to the government's notice (ECF No. 44), arguing that the jail calls are irrelevant, highly prejudicial, and should be excluded. At the final pretrial conference, the court heard argument on Gearheart's objection, overruled it, and broadly determined that the jail calls would be admissible, at least in part.

After overruling Gearheart's objection, the court inquired of counsel whether the entirety or parts of the calls would be played for the jury. Gearheart's counsel argued that the

rule of completeness permits the entirety of the jail calls to be admitted, but the government disagreed, arguing that only relevant excerpts of the calls (i.e., those portions related to the alleged unlawful acquisition of the gun) should be played. As such, the court ordered supplemental briefing to determine "whether parts or the entirety of the jail telephone calls should be admitted" under the rule of completeness. (Order p. 2, May 15, 2023 [ECF No. 92].) The court also directed Gearheart "to file his proposed augmentations to the government's excerpts" and explain the need for these additional portions to be admitted. (Order p. 2, June 2, 2023 [ECF No. 100].) Each party has since filed its supplemental brief (ECF Nos. 95, 98) and provided its proposed excerpts (ECF Nos. 103, 104).

Having carefully considered these submissions, the court will not permit Gearheart to introduce non-excerpted portions of the jail calls, apart from Track 4,[2] because they are not necessary to clarify or explain the specific excerpts offered by the government and the omitted portions contain otherwise inadmissible, self-serving hearsay.

## II. ANALYSIS

The rule of completeness provides that if "a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. "[A] trial court, in applying the rule of completeness, may

---

[2] In his supplemental brief, Gearheart argued that the government's proposed excerpt of Track 4—which would play the first minute and 48 seconds of the call—implies that "[Gearheart's] mother realized they had said too much on the phone and stopped the conversation by saying 'No more.'" (Def.'s Supp. Br. p. 3 [ECF No. 95].) In response, the government conceded this point and suggested that the excerpt of the Track 4 jail call should be extended to approximately two minutes and six seconds. (Gov.'s Suppl. Br. p. 5 [ECF No. 98].) Gearheart did not object to the government's suggestion. Therefore, Gearheart will be permitted to play the first two minutes and six seconds of Track 4 for the jury.

allow into the record relevant portions of otherwise excluded testimony which clarify or explain the part already received, in order to prevent a party from misleading the jury by failing to introduce the entirety of the statement or document." *United States v. Hassan*, 742 F.3d 104, 134 (4th Cir. 2014) (cleaned up). Stated differently, Rule 106 "permits introduction of additional material only to the extent that the material is relevant and is necessary to qualify, explain, or place into context the portion already introduced." 1 Weinstein's Federal Evidence § 106.03(1) (2023) (cleaned up). Therefore, this "rule is protective, merely. It goes only so far as is necessary to shield a party from adverse inferences, and only allows an explanation or rebuttal of the evidence received." *United States v. Moussaoui*, 382 F.3d 453, 481 (4th Cir. 2004) (cleaned up) (quoting *United States v. Corrigan*, 168 F.2d 641, 645 (2d Cir. 1948)).

With this purpose in mind, Rule 106 does not "render admissible the evidence which is otherwise inadmissible under the hearsay rules."[3] *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996). Nor does it require the admission of "self-serving, exculpatory statements made by a party which are being sought for admission by that same party." *Id.* "The fact that some of the omitted testimony arguably [is] exculpatory does not, without more, make it admissible under the rule of completeness." *United States v. Lentz*, 524 F.3d 501, 526 (4th Cir. 2008) (cleaned up) (quoting *United States v. Bollin*, 264 F.3d 391, 414 (4th Cir. 2001)).

---

[3] While the impending change to Rule 106 would clearly permit introduction of hearsay statements for contextual purposes, *see* Fed. R. Evid. 106, 2023 Amendments (stating that "completing [a] statement is admissible over a hearsay objection" if fairness requires the statement to be completed), the court is obligated to follow the law as it currently exists. And in any event, the additional excerpts proffered by Gearheart go well beyond necessary context.

**A. Track 3 Jail Call**

Gearheart contends that the government's excerpt of Track 3[4] "unfairly raises the inference that [he] in fact knows" what he lied about with respect to the alleged straw purchase. (Def.'s Augmentations p. 3 [ECF No. 103].) To clarify this inference, he argues that he should be permitted to play additional parts of Track 3 to explain that "Mr. Gearheart does not understand why he is charged," and "that he is unsure what he is alleged to have lied about." (*Id.* at 3.)

Having reviewed Track 3, the non-excerpted parts are clearly not "necessary to qualify, explain, or place into context" the excerpt offered by the government. 1 Weinstein's Federal Evidence § 106.03(1) (2023). In the government's excerpt (Track 3, 1:54–2:29), Gearheart informs his mother what he is charged with, expresses confusion about this charge, and speculates that it stems from his conversation with law enforcement. Gearheart also states, "What the f**k did I lie about?" The natural inference drawn from these statements is that Gearheart was confused about his charge and did not know what he is alleged to have lied about—and not, as Gearheart suggests, that he "in fact knows" what he lied about. (Def.'s Augmentations at 3.) The excerpt of Track 3, therefore, is not misleading and does not require the admission of additional statements for context.

Moreover, as the government correctly points out, the additional parts of the call contain inadmissible hearsay or otherwise cumulative statements. During the portion of the call preceding the government's excerpt (Track 3, 1:00–1:54), Gearheart is crying while he

---

[4] The government has represented that it will only use this track for impeachment purposes if Gearheart testifies and denies speaking to law enforcement. (Gov.'s Augmentations p. 4 n.4 [ECF No. 104].)

explains the pending charge to his mother and adds that "[he] didn't lie to nobody," and that "[he] shouldn't be in [jail]." But these statements are inadmissible under Rules 106 and 801(d)(2),[5] if offered by Gearheart, because they are self-serving, exculpatory, and not within a hearsay exception. *Wilkerson*, 84 F.3d at 696 (explaining that Rule 106 does not require admission of "self-serving, exculpatory statements made by a party which are being sought for admission by that same party."). While Gearheart argues that these statements are relevant for context, they are plainly inadmissible under the prohibition against self-serving hearsay.

The portion of the call following the government's excerpt (Track 3, 2:29–4:30) also has little evidentiary value. From 2:30–3:15, Gearheart is crying while he asks his mother if she spoke to his girlfriend and then discusses the possibility of being released on bond. These topics are wholly irrelevant to the remaining issues in this case, including for context. They do not provide any insight into Gearheart's actions regarding the alleged straw-purchase, nor do they help clarify the government's excerpt of Track 3. Gearheart's persistent crying also creates "a genuine risk that the emotions of the jury will be excited to irrational behavior" and acquit him based on sympathy. *United States v. Mohr*, 318 F.3d 613, 618 (4th Cir. 2003) (cleaned up) (quoting *United States v. Powers*, 59 F.3d 1460, 1467 (4th Cir. 1995)).

From 3:15–4:30, Gearheart erroneously explains that his charge was for lying to law enforcement officials and then speculates that his charge might have had something to do with L.S., his alleged accomplice in the straw-purchase scheme. Gearheart also makes statements

---

[5] The Federal Rules of Evidence define hearsay as a statement made by a declarant outside of trial and which is offered for the truth of the matter asserted in the statement. *See* Fed. R. Evid. 801(c). But an opposing party's statement is not hearsay if it is offered *against* the opposing party. *See* Fed. R. Evid. 801(d)(2)(A). As the court explained at the final pretrial conference, 801(d)(2)(A) permits the government to introduce Defendant's relevant statements about the underlying facts at issue during its case-in-chief.

that "he didn't lie to anyone," and that "it's bull s**t if [L.S.] does this to me." To the extent that this excerpt illustrates Gearheart's confusion about the charge, the government's proposed excerpt already includes statements underscoring that confusion. Additional statements about his apparent confusion are cumulative and will not be played for the jury. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by . . . needlessly presenting cumulative evidence."). Additionally, Gearheart's statements that "he didn't lie to anyone" and that "it's bull s**t if [L.S.] does this to me" constitute inadmissible hearsay. These statements are exculpatory, self-serving, and do not fall within an exception when offered by Gearheart. *See* Fed. R. Evid. 801(d)(2) (A statement is not hearsay if "[t]he statement is offered against an opposing party . . . .").

Accordingly, Gearheart will not be permitted to introduce additional parts of Track 3 because those parts do not clarify the government's excerpt of the call and the non-excerpted portions contain inadmissible, self-serving hearsay or otherwise irrelevant and cumulative statements.

### B. Track 2 Jail Call

As to Track 2, Gearheart argues that he should be permitted to play the audio from 4:30–6:50 because, as currently excerpted, Gearheart "may look more like a calculated witness intimidator rather than a confused child intending to rely on the law to plead his case." (Def.'s Augmentations at 4.)

But Gearheart's argument is misplaced. Having listened to the entire call, the government's excerpt does not paint Gearheart as a witness intimidator and it includes Gearheart's irrelevant and self-serving statement that he intends to utilize his lawyer to fight

the charge. The government's excerpt (Track 2, 5:38–6:22) begins with Gearheart's mother telling him that she "got all her information," in reference to L.S. Gearheart then responds, "Who [L.S.]? . . . I thought it was like a officer or something but it was her." His mother then asserts that she "knows" Gearheart "took the whatever to [someone] and got it sold," to which Gearheart responds, "I ain't even saying nothing, I'm letting my lawyer do that s**t."

Contrary to Defendant's characterization, these statements imply that this call was the first time Gearheart realized that it was L.S. who had implicated him, not that he wanted to "intimidate" her. As such, additional portions of this call are inadmissible because they are not necessary to explain the government's excerpt. *See* Fed. R. Evid. 106; *Hassan*, 742 F.3d at 134.

Additionally, the omitted parts of the call contain irrelevant topics of conversation or inadmissible hearsay. In the portion of the call preceding the government's excerpt (Track 2, 4:30–5:38), Gearheart's mother apologizes for missing his previous call; Gearheart says his lawyer told him that "they don't got no evidence"; Gearheart and his mother discuss his bond; and Gearheart greets a third party before complimenting his lawyer. There is nothing relevant within this portion of the call that would aid the jury in understanding anything about the alleged offense, let alone the government's excerpt. Moreover, Gearheart's statement concerning the government's lack of evidence is self-serving, exculpatory, and inadmissible. *See* Fed. R. Evid. 801(d)(2).

The portion of the call following the government's excerpt (Track 2, 6:22–6:50) also has little evidentiary value and contains more inadmissible hearsay. In that part of the call, Gearheart's mother agrees that he is not guilty; Gearheart says he wants to fight the case on the outside, not on the inside; and he and his mother discuss the age of his charge. None of

these statements in this part of the call help to explain the government's excerpt. And some of these statements, such as his mother's comments about his innocence and the age of the charge, are inadmissible hearsay. *See* Fed. R. Evid. 801.

Accordingly, Gearheart will not be permitted to introduce additional parts of Track 2. The government's excerpt is clear, and the additional parts Gearheart seeks to introduce are irrelevant or constitute inadmissible hearsay.

### III.   CONCLUSION

For these reasons, Gearheart will not be permitted to introduce additional portions of Tracks 2 and 3 beyond what the government has noticed in its excerpts. But given the parties' agreement as to Track 4, Gearheart will be permitted to play the first two-minutes and six seconds of that call.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 21st day of June, 2023.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE