IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

United States of America

v.                                          Case No. 7:23-CR-13

Andrew Bradley Gearheart

**Defendant's Motion for Judgement of Acquittal and Motion for New Trial**

## Table of contents

Introduction........................................................................ 1

Brief Statement of Facts...................................................... 1

I.  The Court should enter a judgement of acquittal................................ 4

    a.  The government failed to prove an element of the charge: that Ms. Sherry's alleged false statement was made to a federal firearms dealer................................................................. 5

    b.  Even if the Court finds that a responsible person is not necessary for a federal firearm sale, the record still lacks sufficient evidence for a conviction................................................... 10

II. The Court should order a new trial................................... 11

    a.  The Court's refusal to provide a defense theory of the case instruction while simultaneously providing a prosecution theory of the case instruction warrants a new trial............................ 13

    b.  The verdict form incorrectly equated the standard of proof for a conviction or acquittal, and Mr. Gearheart's failure to object does not otherwise waive such plain error...................................... 15

    c.  The government exploited that the firearm was recovered in an unrelated criminal investigation, prejudicing the jury against Mr. Gearheart, and urging the jury to convict in the name of public safety................................................................. 16

Conclusion.............................................................................23

## Introduction

In July of this year, Mr. Gearheart was tried and convicted of aiding and abetting another in making a false statement to a federally licensed firearms dealer ("FFL"). During trial, he moved for a judgement of acquittal pursuant to Rule 29 on two grounds: 1) that the government failed to establish that his actions were sufficient to generate liability for aiding and abetting; and 2) that the government failed to establish that the transaction at issue was an otherwise lawful sale between a private person and an FFL. The Court denied the first ground and reserved judgement on the second. After the jury convicted Mr. Gearheart, the Court directed him to file a motion in support for his oral motion. Counsel informed the Court that Mr. Gearheart would also advance arguments in support of a new trial. Mr. Gearheart argues first that the Court should enter a judgement of acquittal. Though he preserves both grounds, he respects (and maintains his objection to) the Court's denial of his first argument. This pleading advances his second argument for a judgement of acquittal, and if the Court denies that argument, Mr. Gearheart advances three grounds for a new trial: an error in jury instructions, an error in the verdict form, and the government's conduct in exploiting a pretrial ruling.

## Brief statement of facts

Most of the evidence in this case is undisputed. The defense disputes certain aspects of Lindsey Sherry's story, but those disagreements are not material to Mr. Gearheart's motion for a judgement of acquittal. Mr. Gearheart notes them for the benefit of the Court, but his arguments do not require the Court to agree with his

interpretation of the evidence. In any event, the Court knows the facts of this case, having presided over the trial.

In November of 2021, Mr. Gearheart asked Ms. Sherry for assistance in acquiring a firearm. The exact details of the conversation are lost to time. But essentially asked if Ms. Sherry could give him a gun, and Ms. Sherry replied that she did not have one to give him. She suggested that one could be purchased, and Mr. Gearheart asked for her assistance in purchasing a firearm. No plans were made that day. The next day, however, the two confirmed a plan to purchase a firearm. Ms. Sherry picked Mr. Gearheart up from his mother's apartment and drove to Doomsday Tactical, LLC ("Doomsday"), a gun store in Roanoke, Virginia. The parties dispute whether Ms. Sherry picked Doomsday or Mr. Gearheart did, but the two arrived there in short order. The parties also dispute whether Mr. Gearheart gave Ms. Sherry money before she made the purchase or whether she was repaid after. Ms. Sherry testified that Mr. Gearheart gave her the money for the transaction before she entered the store. However, also admitted into evidence is a statement from Ms. Sherry to Mr. Gearheart stating that she "gifted" him the firearm and he "eventually repaid" her for it.

Other evidence corroborates that Mr. Gearheart did not pay Ms. Sherry ahead of time. For example, Ms. Sherry testified that Mr. Gearheart looked up the gun he wanted online and showed her the model on Doomsday's website. Why, then, would he hand her several hundred dollars more than necessary for her to buy the gun when the website would show the price?

In any event, Mr. Gearheart did not ask Ms. Sherry to lie. The two did not discuss the ATF Form 4473. And Mr. Gearheart did not insinuate or imply that Ms. Sherry should lie. There is no evidence that Mr. Gearheart knew Ms. Sherry would have to lie to purchase him a firearm.

Ms. Sherry entered Doomsday alone. She told the clerk which firearm she wanted to purchase, and she even brought a letter with her to help verify her address. She completed the ATF Form 4473. She did not ask any questions. She did not speak to Mr. Gearheart at all during the purchase of the firearm. When she got the gun, she left the store and went back to her car, where she promptly handed it to Mr. Gearheart. Mr. Gearheart took a few photographs of the gun along with one of Ms. Sherry's guns, and she drove him back to his mother's apartment.

Doomsday Tactical, LLC is an FFL. The Form 4473 from this case was introduced in evidence. It lists Doomsday's license number and provides Doomsday as the trade name associated with the license. However, the form also requires the name of the transferor/seller. The listed name and signature belong to Bradley Ashworth—a person who did not testify and about whom no testimony was presented.

During trial, the government constantly repeated that the firearm was found during a criminal investigation, even though that investigation was otherwise irrelevant to this case. The government's opening statement and closing argument focused on this unrelated investigation.

## I.      The Court should enter a judgement of acquittal.

Congress has chosen to regulate the purchase and sale of firearms through federally licensed dealers rather than to impose strict limits on gun transfers. For example, federal law does not generally restrict the intrastate sale of firearms among private parties. Nor does federal law preclude anyone from giving a firearm as a gift. If one buys or receives a firearm from another, there is no requirement that the firearm be registered, unless it is of the rare sort that requires a special tax.

It is generally not illegal to buy a firearm even when intending to give it to someone else. Nor is it a crime to buy a firearm intending to sell the gun to another person. It is illegal, though, to purchase a firearm on behalf of someone else. Why? Because Congress delegated to the Attorney General, who delegated to the ATF, the requirements necessary to purchase a firearm from a federal firearms dealer. *See Mew Sporting Goods, LLC v. Johansen*, 922 F.Supp.2d 665, 671 (N.D. W.Va. 2014) (summarizing the statutory and regulatory framework of FFL applications and licensure provisions). The ATF used that authority to create a form, which conveys this information to purchasers. Nothing within federal law otherwise spells out this tricky distinction—a distinction that entirely turns not on ground truth, but on one's internal motivations. Congress recently chose to make straw purchases a separate criminal offense separate from 922(a)(6), and Congress did not include in that definition the conduct that allegedly occurred here: buying a firearm on behalf of someone otherwise authorized to possess a firearm. *See* 18 U.S.C. 932(b).

Consistent with Congress's decision limit its regulation of firearms transactions, section 922(a)(6) only criminalizes the making of a materially false statement to a federally licensed firearms dealer. It is not illegal to provide a materially false information about a firearms transaction to someone who is not a federally licensed dealer. *See* 18 U.S.C. 922(a)(6).

As Mr. Gearheart is charged with aiding and abetting, the government must prove that a completed crime occurred. Here, Mr. Gearheart argues that the government failed to prove that Ms. Sherry made a false statement to a federally licensed dealer. Because no reasonable finder of fact could conclude that this transaction was between a federal dealer and Ms. Sherry, Mr. Gearheart cannot be said to have aided and abetted. Put another way, the government failed to prove a crime occurred by omitting evidence of an element. As such, no reasonable factfinder could conclude a crime occurred, and the Court must enter a judgement of acquittal.

### a. The government failed to prove an element of the charge: that Ms. Sherry's alleged false statement was made to a federal firearms dealer.

Each person who intends to engage in the business of firearms dealing must have a license. 27 C.F.R. § 478.41(a). It is unlawful to "engage in the business of . . . dealing in firearms" without first obtaining the necessary license. *See* 18 U.S.C. §923(a). Corporations can acquire firearms licenses and each employee with the authority to sell firearms need not acquire his or her own license. However, those individuals acting on behalf of the corporation to use that license must be approved by the ATF and listed as responsible persons. *See* ATF Form 7 at 6 (defining

5

responsible person as "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the Corporation . . . insofar as they pertain to firearms").

The license only authorizes the "person to whom [it is] issued to engage in the business specified on the license." *See* 27 C.F.R. § 478.49 (listing the duration of licenses for three years). The purpose of the license is for the ATF to determine "the identity and eligibility of the applicant . . . the identity and eligibility of all responsible persons, the ownership of the business, the type of firearms or ammunition to be dealt in, the business hours, and the business history." *See* Form 7 at 8. Corporations are required to obtain separate licenses for each individual location from which the corporation conducts business. *See* 27 C.F.R. 478.50. Thus, a license is not coextensive with a corporation. Nor is the license transferable. *See* 27 C.F.R. 478.51.

To obtain a firearm license, an individual must complete an ATF Form 7, attached as an exhibit. The form lists the term *responsible person* no less than 44 times. The form makes clear that each responsible person must complete a portion of the form—part B. Part B is extensive. It comprises two of the four pages of information required to be completed. It requires, among other things, the following for each responsible person:

- A passport photograph taken within the past six months;

- Fingerprint cards;

- Every home address for the past five years;

- A telephone and email address;

- The person's eye color, hair color, sex, and weight;

- The person's race;

- The FFL number for which the person has previously served as a responsible person;

- The FFL number for which the person has previously served as an officer of a corporation;

- Whether the person has ever been employed by an FFL; and

- Information that would disqualify the person from possessing a firearm, including whether the person is a "user of . . .any controlled substance."

The regulations also make clear that firearms licenses are granted and responsible persons are permitted when the applicant otherwise meets the requirements. *See* 27 C.F.R. § 478.47 (directing the ATF "shall approve a properly executed license).

At least one case suggests that the term *responsible person* does not include employees who are able to sell firearms. *See United States v. 1,922 Assorted Firearms and 229,553 Rounds of Assorted Ammunition*, E.D. Mo. 330 F. Supp. 635. In that case, the government sought to invalidate a firearms license because a person listed as a responsible person had a felony conviction. The district court found alternatively that the person was not a responsible person within the meaning of the regulation, or that the applicant had no knowledge of the person's felony conviction. *See id.* at 638.

It is unclear, though, whether a person who has the ability to sell firearms on behalf of the business (and to decline to sell firearms) must be listed as a responsible person. *See Gossard v. Fronczak*, 206 F.Supp.3d 1053, 1062 (D. Md. 2016).

Nonetheless, evidence that the person "actually makes decisions for the applicant's firearm business" is "[t]he most direct evidence" that the person is a responsible person under the law. *See id.* Choosing to sell a firearm, or choosing not to, fits this description. And this is exactly what an employee of an FFL does when completing a firearm transaction using Form 4473.

The law ought not to permit applicants omit from the license those who engage in the actual business of the firearms transactions. After all, a person who routinely sells firearms for another person on their behalf sounds an awful lot like the kind of person who is involved in the business of dealing in firearms. One could simply ask a firearm clerk what his job is and expect the answer to be, "I buy and sell firearms *on behalf of* [my employer]." Implying that the person has the authority to act, with respect to firearms, on behalf of the corporation.

The government may argue that simply acting as a clerk at a store—even one who buys and sells firearms for the business—is not engaging in the business of "dealing in firearms." After all, the clerk receives a meager salary for his work and does not otherwise see the gross or net receipts, and they are acting solely on behalf of another person or corporation. But such an argument defies the common meaning of the word *deal*. When defined as a verb (which would typically be the root form of the gerund *dealing*, that being the nominalization of the verb created by adding an *ing* at the end), deal means "to distribute" or "to transact business." As a noun, "an act of buying and selling; the purchase and exchange." A person who buys and sells firearms, even on behalf of another, is engaged in dealing. If not, counsel has many

clients whose convictions for drug distribution ought to be reconsidered, as they were often acting on behalf of others and receiving meager, if any, compensation. Nonetheless, they dealt drugs—even if only on behalf of others.

At bottom, the law requires each person who engages in the business of firearms dealing to obtain a federal license. *See* 18 U.S.C. 923(a). Congress has chosen only to criminalize making a materially false statement to a federally licensed dealer. *See* 18 U.S.C. 922(a)(6). And federally licensed dealers must complete the ATF Form 4473. The purpose of that form is to allow "a person licensed under 18 U.S.C. 923 [to] determine if he/she may lawfully sell or deliver a firearm to the [buyer]." *See* Gov't Trial Exhibit 6. at 3. And the form must be signed by the transferor and must provide the license number used to effect the transaction. Someone with the authority to sign on behalf of a corporation with respect to firearms sales indisputably has the direct or indirect power to cause or direct the management, policies, and practices with respect to firearms—making the person required to be a responsible person under the law.

Here, Ms. Sherry completed the Form 4473 and provided it to Mr. Ashworth. Mr. Ashworth does not, according to the record evidence, have a federal firearm license nor is he listed on Doomsday's federal firearm license. Thus, there is no evidence that Ms. Sherry made a false statement to a federally licensed dealer (or importer, manufacturer, or collector)—a necessary element of the charge brought by the government. *See* 18 U.S.C. 922(a)(6).

### b. Even if the Court finds that a responsible person is not necessary for a federal firearm sale, the record still lacks sufficient evidence for a conviction.

Even if the Court does not find that a store clerk who has the ability to sell firearms and sign on behalf of the corporation must be a responsible person, no evidence supports that Mr. Ashworth had any authority to act on Doomsday's behalf. No government witness uttered the name *Bradley Ashworth* during trial. The government could have called him as a witness, but for some reason chose not to. The government could have called a witness to testify that Mr. Ashworth was an employee and had the authority to sell firearms on behalf of doomsday, but they chose not to.

The government called Colton Smallwood, who testified generally about how firearms transactions occurred. But Mr. Smallwood did not identify or testify that he recognized the Form 4473 that was used in this case. Instead, the government merely used that form to allow Mr. Smallwood to describe how a transaction would hypothetically occur. *See* Dkt. 153 at 247 – 255. Mr. Smallwood testified that he recognized the government's exhibit as something he reviewed in preparation for trial, but not that he recalled it from this transaction or from his employment at Doomsday. In fact, the only thing Mr. Smallwood recalled about this transaction was the letter Ms. Sherry used to prove her identity. When asked if he remembered anything else—apart from the envelope—about this transaction, he testified "I do not." *See* Dkt. 153 at 266.

The government's entire case rests on the importance of the Form 4473 and the firearm transaction itself. Yet curiously, the government put on no evidence from the licensed dealer that the person who engaged in the transaction had any authority

to do so. If Doomsday Tactical had the ability to sign documents on its own behalf, this would not have been an issue. Conversely, if the owner of Doomsday or a responsible person with knowledge of this transaction testified, the government would have proven this element. But the government chose not to present any evidence of who Mr. Ashworth is and what authority he had to engage in this transaction on behalf of Doomsday Tactical. Without that, a crucial element of this crime has not been proved. Indeed, without that proof, there is no reason for this case to have been in federal court at all. The government neglected to prove an element of the charge. Because they neglected to prove an element, the evidence is insufficient to sustain a conviction, and the Court should enter a judgement of acquittal.

## II.      The Court should order a new trial.

If the Court declines to enter a judgement of acquittal, the Court should order a new trial pursuant to Federal Rule of Criminal Procedure 33, and its predicate constitutional provisions within the Fifth and Sixth amendments. "By its terms, Rule 33 confers broad discretion on a district court." *United States v. Prescott*, 221 F.3d 686 (4th Cir. 2000). The Court has discretion to grant a new trial on almost any ground affecting the interest of justice—*see United States v. Smith*, 451 F.3d 209 (4th Cir. 2006)—including its own restriction of defense evidence—*id.* at 222—or erroneous admission of improper testimony—*see United States v. Burfoot*, 899 F.3d 326 (4th Cir. 2018).

Although grants of a new trial are the exception rather than the rule, the Court may grant a new trial where the evidence of guilt was arguable, marginal, or where

a guilty verdict may have been influenced by errors made at trial. *See United States v. Russell*, 221 F.3d 615 (4th Cir. 2000). When reviewing the evidence and deciding whether to grant a new trial, the Court does not view the evidence in the light most favorable to the government. *See United States v. Miller*, 41 F.4th 302 (4th Cir. 2022); *United States v. Arrington*, 757 F.2d 1484 (4th Cir. 1985).

Three errors plagued Mr. Gearheart's ability to receive a fair trial. Two occurred after the evidence was presented, and one occurred when the government exploited a pretrial ruling to inject the case with substantial prejudice. Alone, any ground could warrant the relief requested. But the cumulative effect of each error weighs strongly in favor of ordering a new trial.

First, the Court refused to provide defense counsel's proposed defense theory instruction but gave a government theory instruction. Second, the verdict form incorrectly implied that the jury must be convinced of Mr. Gearheart's innocence by proof beyond a reasonable doubt to find them not guilty. Mr. Gearheart's failure to object to the verdict sheet does not waive such plain error. Third, the Court's pretrial rulings permitting the introduction of evidence that the firearm was recovered in an "unrelated criminal investigation" unfairly prejudiced the jury against Mr. Gearheart. The government took advantage of the Court's ruling by inappropriately using the firearm's recovery in a criminal investigation to persuade jurors to convict Mr. Gearheart in the interest of community safety.

### a. The Court's refusal to provide a defense theory of the case instruction while simultaneously providing a prosecution theory of the case instruction warrants a new trial.

The Court refused to give Mr. Gearheart's requested theory of defense instruction but essentially provided a prosecution theory of the case instruction. Giving the prosecution-oriented theory instruction demonstrates why Mr. Gearheart's instruction was necessary. Without it, Mr. Gearheart's ability to present his theory was "seriously impaired," as the only theory instruction supported the government's version of the case. *See Lewis*, 53 F.2d at 35.

The law is clear that defense theory instructions are appropriate if they are correct statements of the law, are not superfluous, and are supported by sufficient evidence. *See United States v. Lewis*, 53 F.3d 29 (4th Cir. 1995); *see also United States v. Hicks*, 748 F.2d 854, 857 (4th Cir. 1984) ("[i]t is settled law in this circuit as well as in other circuits that, at leas upon proper request, a defendant is entitled to an instruction submitted to the jury any theory of defense for which there is a foundation in the evidence"). Mr. Gearheart proposed the following instruction, which the Court declined to provide.

**Instruction No __**

**Defense theory of the case**

The defendant has argued that he is not guilty because the government has not proven that he had any knowledge of whether a false statement was made by Ms. Sherry or that he encouraged her to do so. If you do not believe the government has proven beyond a reasonable doubt either

    1)  That Mr. Gearheart had knowledge of a false statement; or
    2)  Encouraged Ms. Sherry to make a false statement

Then you must find Mr. Gearheart not guilty.

Rather than provide this instruction, the Court informed the jury what evidence was

sufficient for it to convict Mr. Gearheart.

### INSTRUCTION NO. 23
### Aiding and Abetting for 18 U.S.C. § 922(a)(6)

In order to prove that the defendant aided and abetted a violation of 18 U.S.C.
§ 922(a)(6), it is enough for the government to prove that the defendant encouraged
the straw purchaser to misrepresent herself as the actual buyer of the firearm and that,
in order to do so, she was required to lie on a Form 4473. It is not necessary that the
government prove that the defendant expressly knew that the straw purchaser must
falsely state specific portions of a Form 4473.

Further, the intent necessary to support a conviction can be proven by direct or
circumstantial evidence.

Essentially, the Court instructed the jury what was sufficient for them to

convict, but declined to instruct the jury what was sufficient for them to acquit. The

prosecution is not entitled to a theory of the case instruction. But providing only a

prosecution-oriented theory and denying a defense theory instruction is

fundamentally unfair and deprived Mr. Gearheart of his ability to adequately present

his defense. *See Lewis* at 35 (noting that it would be "anomalous to conclude that a

district court's failure to give a defendant's proposed instruction which substantially

impaired his ability to present his defense can be harmless").

**b. The verdict form incorrectly equated the standard of proof for a conviction or acquittal, and Mr. Gearheart's failure to object does not otherwise waive such plain error.**

Mr. Gearheart objected to a portion of the verdict form that mentioned straw purchases. His counsel did not timely object to the language on the verdict form that instructed the jury had to find the defendant's guilt or innocence beyond a reasonable doubt. But in criminal cases, a plain error that effects substantial rights may be considered even though not brought to the Court's attention." *See* Fed. R. Crim. P. 52(b). This error effects his substantial rights and clearly is an incorrect statement of the law. Alone, or in conjunction with the other issues Mr. Gearheart has raised, ought to require a new trial. The relevant portion of the verdict form copied below:

**VERDICT FORM**

We, the jury, unanimously find beyond a reasonable doubt as follows:

As to the charge of aiding and abetting the making of a false statement in connection with the acquisition of a firearm, in violation of 18 U.S.C. §§ 2 and 922(a)(6), on or about November 23, 2020 in the Western District of Virginia, we find Andrew Bradley Gearheart:



_____ NOT GUILTY

_____ GUILTY

*Have the foreperson sign and date the verdict form and notify the courtroom security officer.*

This form incorrectly equates the jury's burden when finding the defendant guilty or not guilty. In effect, it requires the jury to unanimously conclude, beyond a reasonable doubt, that the defendant is not guilty before they can acquit him. This is plainly incorrect.

The language also could be read to suggest two possible outcomes: either the jury agrees beyond a reasonable doubt that the defendant was not guilty or that the

15

jury finds beyond a reasonable doubt that he is guilty. But a host of possibilities exist between these two poles—indeed, nearly every possible outcome, and all of which would require the jury to find Mr. Gearheart not guilty. For example, the jury could believe that the government proved its case by a preponderance of the evidence, but that it could not reach any conclusion beyond a reasonable doubt. Such a conclusion must result in a verdict of not guilty, but the verdict form suggests that would not be a possible outcome.

The Court several times instructed the jury that the defense does not have a burden, but only once instructed the jury about the standard of proof necessary. Though it was clear that the government alone bore the burden of proof, the verdict form and instructions did not make clear that the jury could decide that proof beyond a reasonable doubt was not presented of anything. In which case, the only lawful result would have been an acquittal. This court is not the only one to have used an incorrect verdict form that suggests the jury must find beyond a reasonable doubt to acquit a defendant. *See United States v. Bustos*, 303 Fed. Appx. 656, 663 (10th Cir. 2008) (finding no plain error in a nearly identical verdict form because of the "overwhelming" and "uncontroverted" evidence of guilt). This case did not involve overwhelming evidence of guilt, and direct evidence supported several theories on which the jury could have acquitted Mr. Gearheart. Given the evidence introduced and the other issues raised by Mr. Gearheart, the Court should order a new trial.

     **c. The government exploited that the firearm was recovered in an unrelated criminal investigation, prejudicing the jury against Mr. Gearheart, and urging the jury to convict in the name of public safety.**

Prior to trial in writing (ECF No. 58) and at a pretrial hearing on May 15, 2023, defense counsel moved in limine to preclude irrelevant, unfairly prejudicial evidence that law enforcement recovered the firearm in this case while investigating a shooting in Roanoke, Virginia (the seat of the trial). Defense counsel argued that evidence of the firearm's recovery during a criminal investigation should be considered the kind of prior crime, wrong, or act prohibited by Federal Rule of Evidence 404(b), and that, even if the Court found that the evidence did not fall under the umbrella of FRE 404(b), it must be excluded because it is irrelevant to the crime charged and the danger of unfair prejudice and confusion substantially outweighed any possible probative value, citing FRE 401 and FRE 403. ECF No. 58.

 In its motion, defense counsel pointed out that jurors may be "understandably upset that a firearm purchased in November was later potentially used in a shooting a few months later" could "cause the jury to focus on irrelevant emotional response to this country's worrying problem of gun violence." *Id.*, p. 6.

Defense counsel predicted the government would "introduce this evidence because it wants the jury to believe that the firearm Mr. Gearheart allegedly purchased was used in a shooting." *Id.*, p. 7. Defense counsel cautioned that in doing this the government would be seeking to appeal "almost entirely to the emotions of the jury and not their reason or common sense." *Id.* Ultimately, defense counsel asked the Court to exclude any evidence about the April 3, 2021 incident from Mr. Gearhart's trial. *Id.*, p. 9.

The Court granted the motion in part but denied the motion in part. The Court granted the motion with respect to evidence that the gun in question was used in a shooting, but permitted the government to offer evidence that the gun was recovered on April 3, 2021, in connection with an "unrelated criminal investigation." ECF No. 92. The Court's partial ruling did not do enough to protect Mr. Gearheart from the unfair prejudice forecasted by defense counsel. Instead, the ruling allowed the government to take advantage of universal concern about gun crimes and gun control in the United States to persuade the jury to convict an innocent person.

During trial, the government used this fact and phrase to do exactly what defense counsel predicted the government would do. During its closing argument, the government used this information to prejudice the jury against Mr. Gearheart and to confuse and distract the jury – all concerns of Rules 404(b) and 403.

The government used the fact that the law enforcement recovered the firearm in an unrelated investigation to do much more than provide context at trial. The government mentioned the recovery of the firearm in a criminal investigation three times in its opening statement (twice in the first few lines of its speech). ECF No. 153, p. 129, ll. 12-14; p. 113, l. 16.

The government first elicited evidence of the firearm's recovery through a Roanoke City Police Officer. The government asked the officer where he recovered the gun. He answered, "It was on the 4400 block of Lewistown Street, Northwest Roanoke." ECF No. 153, p. 139, ll. 21-23. The government then asked if the firearm

was recovered in a criminal investigation and Officer Cochran said yes. ECF No. 153, pp. 129, l. 25 - 130, l. 1.

The government expanded its efforts by tying background checks to safety. The government asked the Agent Adam Moody about background checks and, specifically, the background check in this case. This line of dangerous questioning came after the defense objected to the government asking Agent Moody to define straw purchase. ECF No. 153, p. 159:16-20. Agent Moody answered, "a straw purchase is when somebody buys a firearm for someone else" and went on to explain that if Form 4473 is not accurate it "can hinder other investigations in the future, and secondly, probably most importantly, it circumvents the background check, which is a legal standard to make sure that the community is safe." Not only does this statement ignore that there are legal avenues to obtain a firearm which would "circumvent the background check," such as a gift or private sale to a person aged 18 to 20, it was an effort by the government and their case agent to make this case about safety, instead of the crime charged. ECF No. 153, pp. 149-150. And, though the Court properly instructed the jury (ECF No. 131, p. 31) the government's fearmongering drowned out the law.

The damage caused by allowing the government to elicit this evidence became clear during its closing argument and rebuttal, where it used the fact of the criminal investigation to sound an alarm. The government began its closing with the criminal investigation –

> The defendant, Bradley Gearheart, wanted a pistol and he broke the law
> to get one. And just four months later that gun was recovered by police

conducting a criminal investigation. ON April 3, 2021, this gun, this Taurus G2C 9-millimeter pistol, was recovered by police in Northwest Roanoke in the course of a criminal investigation. As Field Training Officer Sam Cochran testified yesterday, the gun was logged into evidence and a firearms clearinghouse form was complete so that the serial number of the gun could be traced.

ECF No. 154, p. 113, ll. 16-25.

The government's agenda became clear during its rebuttal when it cautioned the jury,

False statements can also undermine criminal investigations. Recall the testimony of Agent Moody. ATF helps to trace crime guns, and those traces can develop valuable leads in investigating crimes. What about Officer Cochran? He testified yesterday that a firearms clearinghouse form is done for every gun recovered at a crime scene. The Roanoke City PD wants that information. They need that information. They want the trace, but when the trace records don't really show the actual purchaser of the gun, just like what happened in this case, then what does that do to law enforcement's ability to investigate crimes?

ECF No. 154, p. 138, ll. 5-15.

Relevant, evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "[T]he mere fact that the evidence will damage the defendant's case is not enough—the evidence must be unfairly prejudicial, and the unfair prejudice must substantially outweigh the probative value of the evidence." *United States v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008) (quoting *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006)).

Evidence is unfairly prejudicial and thus should be excluded under Rule 403 "when there is a genuine risk that the emotions of a jury will be excited to irrational

behavior, and that this risk is disproportionate to the probative value of the offered evidence." *Id.* (quoting *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996)). Unfair prejudice addresses admittedly relevant evidence that could entice the finder of fact into concluding guilt based on improper grounds, such as any reason other than evidence presented to prove the offense charged. Specifically, with regard to aiding and abetting the offense of making a false statement on a firearm form, 18 U.S.C. § 922(a)(6), there is no requirement to present evidence that the firearms were recovered in a criminal – or really any kind of – investigation without the knowledge of Mr. Gearheart. When the information intended to be introduced by the government is unnecessary to the proof of the charge and presents a risk of prejudice that substantially outweighs its probative value, such evidence must not be admitted. To prevent this prejudice, the Court should have limited the evidence to something like – on or about April 3, 2021, the government learned Ms. Sherry had purchased a firearm.

The Indictment (ECF No. 3) alleges Mr. Gearheart aided and abetted Ms. Sherry's violation of 18 U.S.C. § 922(a)(6). A violation of § 922(a)(6) is complete at the point of sale. The evidence of what happened to the firearm after the sale is therefore not directly relevant to the elements of whether Mr. Gearheart aided and abetted Ms. Sherry in the purchase of the firearm. What happened to the guns downstream, especially in the absence of any proof that Mr. Gearheart had knowledge of the events, does nothing to make any fact in contention more or less likely, and therefore not relevant. *See* Fed. R. Evid. 401. In other words, if the guns had been kept by Mr.

Gearheart, or destroyed, or provided to terrorists, none of those outcomes would illuminate whether Mr. Gearheart agreed to or did actually aid and abet the making of a false statement about the identity of the actual buyer in the purchase of the firearm. It wouldn't have mattered whether law enforcement recovered the firearm in Mr. Gearheart's legal possession or in the hands of a mass shooter – the alleged crime, its elements, and the question for the jury in this trial would be the same. Relevance, in the 403 balancing test, is therefore minimal.

It is improper for the government directly to urge the jury to convict in order to send a message to the community, or out of fear of illicit gun violence in the community. See, e.g., United States v., Monaghan, 741 F.2d 1434, 1441 (D.C. Cir. 1984) ("A prosecutor many not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking."). And, here, armed (no pun intended) with the fact that the firearm was recovered in a criminal investigation, the government did just that. Look no further than its final words to the jury –

> False statements can also undermine criminal investigations. Recall the testimony of Agent Moody. ATF helps to trace crime guns, and those traces can develop valuable leads in investigating crimes. What about Officer Cochran? He testified yesterday that a firearms clearinghouse form is done for every gun recovered at a crime scene. The Roanoke City PD wants that information. They need that information. They want the trace, but when the trace records don't really show the actual purchaser of the gun, just like what happened in this case, then what does that do to law enforcement's ability to investigate crimes?

ECF No. 154, p. 138, ll. 5-15. This speech was the culmination of the government's effort to – as defense counsel feared – to "cause the jury to focus on irrelevant

emotional response to this country's worrying problem of gun violence." ECF No. 58, p. 6. Instead of respecting the Court's ruling, the government abused it, knowing the court had, in part, agreed with defense counsel's concerns.

The Court rightfully considered the risk of this kind of prejudice, but it did not go far enough when it only granted defense counsel's motion in part. The introduction of fact of the recovery of the firearm in a *criminal* investigation – even, but perhaps especially, an investigation unrelated to Mr. Gearheart – and the government's use of this fact to convince the jury of the danger of the alleged straw purchase created prejudice that prevented justice.

## Conclusion

The government failed to present evidence of an element of the charge. For some reason, the government declined to bring (and discovery does not show any attempt to bring) a witness who had any knowledge of the firearm transaction or who could testify that the person with whom Ms. Sherry transacted had any authority to act as an FFL or on behalf of an FFL. If the Court declines to enter a judgement of acquittal, it should order a new trial for any one of three reasons or the cumulative effect of the errors at trial.

Respectfully submitted,

/s/ Benjamin Schiffelbein             /s/ Abigail Thibeault
Counsel for Mr. Gearheart            Counsel for Mr. Gearheart
210 First Street SW, Ste 400
Roanoke, VA 24011
Benjamin_Schiffelbein@fd.org         Abigail_Thibeault@fd.org