IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 7:25-cr-00009 / |
| ANDREW BRADLEY GEARHEART, | ) | Case No. 7:23-cr-00013 |
| | ) | |
| *Defendant.* | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States, by counsel, respectfully submits this combined sentencing and revocation memorandum in the above-captioned matters.[1]

## I.    BACKGROUND

A federal grand jury returned a one-count indictment against the defendant, Andrew Bradley Gearheart. ECF No. 1. Count One alleged that on or about March 13, 2025, Gearheart knowingly possessed a firearm, knowing that he was a convicted felon, in violation of 18 U.S.C. § 922(g)(1). At the time of the alleged offense, Gearheart was on federal supervised release related to the straw purchase of a firearm. Because the new law violation and the possession of a firearm violated Gearheart's terms of supervised release, the United States Probation Office filed a revocation petition. *See* Case No. 7:23-cr-00013, ECF No. 229 (amended petition).

The parties entered into a plea agreement. In exchange for Gearheart's plea of guilty, the United States agreed to recommend a sentence at the low end of the applicable Guidelines range. The government also agreed to recommend a low-end revocation sentence. Gearheart entered his guilty plea as agreed on July 7, 2025. ECF No. 36 (hearing minutes). The Court

---

[1] Docket citations in this memorandum, unless otherwise noted, are in Case No. 7:25-cr-00009.

accepted the plea agreement and adjudged Gearheart guilty as charged in Count One of the Indictment. *Id*. Sentencing is scheduled for December 4, 2025. The government does not anticipate calling any witnesses, but reserves the right to call the case agent, ATF Special Agent Adam Moody, or the probation officer, in the event that matters in the PSR become disputed.

## II.   SENTENCING ARGUMENT

For his role in procuring the straw purchase of a firearm, Bradley Gearheart received uncommon clemency from the Court: a time served sentence, two years of supervised release, and community service. The Court made clear to Gearheart what it had done: "I'm giving you a chance that one could argue . . . that I shouldn't given your background, but I'm going to do it anyway. And I want you to know so we're on the same page, if you mess it up, it's on you and I'm not going to hesitate putting you in jail." Case No. 7:23-cr-00013, ECF No. 193 at 97:16–20 (sentencing transcript).

Gearheart squandered the second chance that the Court gave him. Less than 14 months after commencing his term of supervised release, Gearheart possessed a loaded, stolen pistol. After considering the applicable statutory sentencing factors, the government recommends a low-end Guidelines sentence of 30 months.

***Nature and Circumstances of the Offense***. The nature and circumstances of the offense are serious. Bradley Gearheart was a convicted felon. He was on supervised release following his conviction for a federal firearms offense. So he was doubly prohibited from the possession of firearms. And yet on March 13, 2025, U.S. Probation Officers located this in Gearheart's bedroom closet, inside a large plastic bag containing clothes:

2



This gun—an FN Five-SeveN—contained an extended 20-round magazine, partly loaded with 13 rounds of 5.7x28mm ammunition. PSR ¶ 7. The gun had been reported stolen to the Vinton Police Department on October 12, 2024. *Id*. Also in Gearheart's bedroom, probation officers located a spent 9mm shell casing in the top drawer of a nightstand, and seven sealed commercial packages labeled as containing cannabis.[2] *See* Case No. 7:23-cr-13, ECF No. 230 at 6 (SRV Report).

The exact provenance of Gearhart's pistol is unknown. Gearheart initially claimed to a police officer (after waiving his *Miranda* rights) that he "found" the gun. *See* PSR ¶ 8. Confronted with the implausibility of that tale, Gearheart told a different one: He said that he bought the gun in a Burger King parking lot for $500 from an unknown individual he

---

[2] This shell casing was associated by NIBIN with a shell casing recovered in the course of a Roanoke shooting investigation in January 2024. Law enforcement is not aware of any known connection between Gearheart and that incident.

contacted on Facebook. *See id*. Gearheart claimed that this transaction took place in January 2025. *Id*.

On the other hand, the owner of the FN pistol suspected Gearheart of stealing the gun in October 2024. *See* Ex. A (interview report). The owner, W.B., told law enforcement that he met Gearheart for the first time the night the gun went missing. Gearheart and two others were standing by the car that W.B. was riding in. W.B. believed that Gearheart (who was standing at the open driver side window) saw W.B. place the gun under the front passenger seat of the car.[3]

Whatever the exact manner in which Bradley Gearheart came into possession of the gun, Gearheart had apparently possessed the FN pistol for a period of months, all while under the supervision of the U.S. Probation Office.

*History and Characteristics of the Defendant*. Gearheart's criminal history can be seen in two different lights. On the one hand, Gearheart is in the lowest possible criminal history category of I. PSR ¶ 34. But he *does* have a criminal history, and it could be said that his current charge represents the latest episode in a slow-burning escalation in criminal conduct.

At age 16, Gearheart was stealing phones and dirt bikes. *Id*. ¶ 27. At age 18, Gearheart obtained a Taurus handgun in a straw purchase transaction that was recovered four months later from a third party in the course of a criminal investigation. *See id*. ¶ 31. At age 19, Gearheart (in the company of an armed individual) was involved in an apparently gang-related fight. *Id*. ¶ 30. And at age 23, Gearheart, a convicted felon, possessed a loaded handgun that he may or may not have stolen. The trajectory is concerning.

---

[3] For reasons that are unclear, W.B. did not apparently volunteer these suspicions to the Vinton Police Department when he filed a stolen firearm report. *See* Ex. B (stolen firearm report).

As for Gearheart's personal history and characteristics, the Court is aware that Gearheart's family life, coupled with mental health and substance abuse issues, are factors at play in his conduct. *See id*. ¶¶ 43–44, 49–51, 52–53. These things are mitigating, but only up to a point.

***Fashioning the Appropriate Sentence***. After considering the Section 3553(a) factors, the government recommends that the Court impose a term of imprisonment of 30 months. That is a low-end Guidelines sentence that adequately reflects and justly punishes the seriousness of Gearheart's offense, promotes respect for the law, deters future criminal conduct by Gates, and protects the public from further crimes. The government further recommends that the Court impose an additional period of supervised release.

## III.    REVOCATION ARGUMENT

The government next turns to the appropriate revocation sentence. In a revocation proceeding, "the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S.S.G. Ch. 7 pt. A; *see also* 18 U.S.C. § 3583(e) (identifying statutory factors the Court should consider in revocation proceeding).

Gearheart's breaches of trust were monumental. Despite being on supervised release, Gearheart possessed a firearm and ammunition, along with suspected marijuana. Case No. 7:23-cr-13, ECF No. 230 at 6 (SRV Report). He tested positive for marijuana and amphetamines/methamphetamine (although he denied knowingly using the latter). Gearheart very well understood, given the Court's earlier admonitions, that he could not possess any of these things. And Gearheart's defiance of the Court's orders was—at least in the case of the firearm—sustained in duration. Gearheart possessed that item for at least a

matter of months (January 2025, if Gearheart's story is to be believed). For these reasons, Gearheart has flagrantly violated multiple conditions of supervised release, as further set forth in the SRV Report. Revocation is mandatory because Gearheart possessed a firearm. *See* 18 U.S.C. § 3583(g)(2).

Despite all this, it must be said that Gearheart was previously doing well on supervised release. According to his supervising officer, for much of last year, until leaving a job in November 2024, Gearheart seemed to be making good progress. It seems that when Gearheart stopped working, so did his motivation. His hard-earned progress came crashing down shortly thereafter.

The government recommends that the Court impose a low-end Guidelines sentence of six months and further recommends that this sentence be imposed consecutive to the sentence given for Gearheart's § 922(g)(1) offense.

### IV.    CONCLUSION

For the foregoing reasons, the government recommends a sentence of 30 months and a period of supervised release for the primary violation, along with revocation of supervised release and a revocation sentence of six months.

Respectfully submitted,

ROBERT N. TRACCI
Acting United States Attorney

/s/ Lee S. Brett
Assistant United States Attorney
United States Attorney's Office
P.O. Box 1709
Roanoke, VA 24008-1709
Tel: (540) 857-2250 | Fax: (540) 857-2614
lee.brett@usdoj.gov

6

## CERTIFICATE OF SERVICE

I hereby certify that on 11/28/2025, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the defendant.

/s/ Lee S. Brett
Assistant United States Attorney